FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 MAR 31  PM 2: 04

STEPHAN HARRIS, CLERK
CHEYENNE

Mary Jo O'Neill, AZ Bar #005924 (Pro Hac Vice Pending)
James P. Driscoll-MacEachron, AZ Bar #027828 (Pro Hac Vice Pending)
Michael Baskind, AZ Bar #030810 (Pro Hac Vice Pending)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Phoenix District Office
3300 N. Central Ave., Suite 690
Phoenix, Arizona 85012
Telephone: (602) 640-5003
Fax: (602) 640-5009
Email:  mary.oneill@eeoc.gov
        james.driscoll-maceachron@eeoc.gov
        michael.baskind@eeoc.gov

Attorneys for Plaintiff

John R. Green
Acting United States Attorney
C. Levi Martin, Bar # 6-3781
Assistant United States Attorney
United States Attorney's Office
P.O. Box 668
Cheyenne, WY 82003
Telephone:  (307) 772-2124
Email:  christopher.martin@usdoj.gov

Associate Local Counsel for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO.: **17CV063-S** |
| v. | **COMPLAINT** |
| MINE RITE TECHNOLOGIES, LLC, | **(JURY REQUESTED)** |
| Defendant. | |

-1-

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Jason Kaufman. As alleged with greater particularity in paragraphs below, Defendant Mine Right Technologies discriminated against Mr. Kaufman on the basis of Kaufman's Post-Traumatic Stress Disorder by, among other things, referring to Kaufman as "crazy" and "psycho," and by calling the days on which Kaufman received therapy for his PTSD "Psycho Thursdays." Mine Rite's two principal owners knew about the harassment, and the harassment reached such an egregious level that Kaufman was constructively discharged.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Wyoming.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section

107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      At all relevant times, Defendant, Mine Rite Technologies, LLC, a Wyoming corporation, has continuously been doing business in the State of Wyoming and the City of Buffalo, and has continuously had at least 15 employees.

5.      At all relevant times, Mine Rite has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12111(5), (7).

6.      At all relevant times, Mine Rite has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Kaufman filed a charge with the Commission and with the Wyoming Department of Workforce Services alleging violations of the ADA by Mine Rite.

8.      On May 4, 2016, the Commission issued a Letter of Determination to Mine Rite finding reasonable cause to believe that the ADA was violated and inviting Mine Rite to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.      On September 8, 2016, the Commission issued a Notice of Failure of Conciliation advising Mine Rite that the Commission was unable to secure a conciliation agreement acceptable to the Commission from Mine Rite.

10.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

11.    Jason Kaufman served in the United States Army from 1999 to 2006.

12.    While he was in the Army, Jason Kaufman served in Iraq for twelve months.

13.    Jason Kaufman was honorably discharged in February 2006.

14.    Jason Kaufman was hired by Mine Rite on November 2, 2009 as a welder.

15.    When he was hired, Jason Kaufman's supervisors were Jason Tomich and Pierre Francis.

16.    Roger Zimdars was originally Kaufman's co-worker, but Zimdars was promoted to shop supervisor in November 2011.

17.    Kaufman began attending therapy on Thursdays in June 2011 at the VA Medical Center in Sheridan, WY.

18.    During the summer of 2011, Zimdars began referring to Thursdays as "Psycho Thursdays."

19.    Before and after Zimdars became a supervisor, Zimdars regularly referred to Kaufman as "psycho," "crazy," or "loony" to Kaufman's coworkers.

20.    Zimdars's comments were well-known throughout Mine Rite, including by its co-owners Dennis Frank and John D'Amico.

21.    Kaufman's coworkers regularly told Kaufman about Zimdars's comments.

22.    Kaufman took leave in 2012 to attend an extended PTSD therapy program.

23.    He returned to work in September 2012.

24.    At a staff meeting on October 29, 2012, Zimdars announced that Kaufman would not need new boots for work because Kaufman had not worn boots while he was in the psycho ward.

25.   Co-owners Frank and D'Amico were present at the October 29, 2012 meeting.

26.   Kaufman was told about Zimdars's comments at the October 29, 2012 meeting.

27.   Kaufman confronted Zimdars on November 1, 2012 about his offensive comments about him at the October 29th meeting.

28.   Kaufman told Zimdars he did not like being called "psycho" and asked Zimdars to stop.

29.   Zimdars began yelling and poking Kaufman in the chest.

30.   Zimdars admitted to Kaufman that he called Kaufman "psycho," and told Kaufman if did not like it, Kaufman could leave.

31.   Zimdars refused to say he would stop calling Kaufman "psycho."

32.   Kaufman did not return to work the following day because Zimdars made clear that he would not stop calling him "psycho."

33.   The next day, owner Dennis Frank called Kaufman about the interaction with Zimdars.

34.   Kaufman told Frank about the conversation he had with Zimdars.

35.   When Kaufman told Frank about the harassment on November 2, Frank did not offer to address the harassment.

36.   Frank asked Kaufman if Kaufman was resigning, and, after Kaufman said he was, Frank accepted his resignation.

37.   Kaufman felt that Mine Rite was not going to address the inappropriate harassment by Zimdars.

38.   Kaufman felt he had no other option but to quit his job because the conditions of working at Mine Rite were intolerable and the actions of Zimdars and Frank made clear that

nothing was going to change.

39.     On November 3, 2012, Frank authorized a write-up of Kaufman to say that Kaufman had resigned.

40.     Upon information and belief, Mine Rite did not take any action to investigate or remedy Zimdars's harassment after Kaufman told Frank about it on November 2, 2012.

41.     Mine Rite's co-owners were aware of the ongoing harassment.

42.     Mine Rite knew that Zimdars used the term "Psycho Thursday" and other derogatory terms about Kaufman.

43.     Despite this knowledge, Mine Rite did not take any action to correct the harassment.

44.     Mine Rite did not exercise reasonable care to prevent harassment based on disability.

45.     Mine Rite did not have any written harassment or ADA policies.

46.     Upon information and belief, Mine Rite did not offer its managers any training on the ADA and/or harassment, and Mine Rite did not provide clear methods for its employees to complain of harassment by Mine Rite's management.

47.     Upon information and belief, Zimdars continued to work for Mine Rite and was not disciplined in any way for his harassment of Kaufman.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF

### [Disability-Based Hostile Work Environment –42 U.S.C. § 12112]

48.     The allegations contained in the foregoing paragraphs 11-47 are hereby incorporated by reference.

49.     Kaufman is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).  Kaufman has an impairment, Post-Traumatic Stress Disorder, that substantially limits major life activities.

50.     Mine Rite also regarded Kaufman as having a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

51.     Since at least June 2011, Mine Rite has engaged in unlawful employment practices at its Buffalo location, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112, by subjecting Jason Kaufman to severe or pervasive harassment constituting a hostile work environment because of his disability.

52.     Mine Rite knew or should have known that Zimdars was constantly harassing Kaufman because of Kaufman's disability.

53.     Mine Rite did not exercise reasonable care to prevent harassment based on disability.

54.     Mine Rite did not have any written ADA or harassment policies.

55.     Mine Rite did not promptly correct the harassment.

56.     Mine Rite did not take any action to investigate or remedy Zimdars's harassment after Kaufman told Frank about it on November 2, 2012.

57.     Upon information and belief, Mine Rite did not discipline Zimdars for his harassment of Kaufmann.

58.     Mine Rite subjected Kaufman to a hostile work environment based on his disability and/or because it regarded Kaufman as disabled.

59.     The effect of the practices complained of in paragraphs 11-58 above has been to deprive Kaufman of equal employment opportunities and otherwise adversely affect his status as

an employee because of his disability.

60.     The unlawful employment practices complained of in paragraphs 11-58 above
were intentional.

61.     The unlawful employment practices complained of in paragraphs 11-58 above
were done with malice or with reckless indifference to the federally protected rights of Kaufman.

## SECOND CLAIM FOR RELIEF

### [Constructive Discharge– 42 U.S.C. § 12112]

62.     The allegations contained in the foregoing paragraphs 11-61 are hereby
incorporated by reference.

63.     Defendant engaged in unlawful employment practices in its Buffalo, Wyoming
facility in violation of Section 102 of the ADA, 42 U.S.C. § 12112, by constructively discharging
Jason Kaufman.

64.     Kaufman was subjected to severe or pervasive harassment.

65.     Mine Rite made clear that it was not going to stop harassing him.

66.     The harassment that Kaufman suffered made his working conditions so difficult
that a reasonable person in Kaufman's position would feel compelled to resign.

67.     The effect of the practices complained of in paragraphs 11-66 above has been to
deprive Kaufman of equal employment opportunities and otherwise adversely affect his status as
an employee because of his disability.

68.     The unlawful employment practices complained of in paragraphs 11-66 above
were intentional.

69.     The unlawful employment practices complained of in paragraphs 11-66 above
were done with malice or with reckless indifference to the federally protected rights of Kaufman.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Mine Rite, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from harassing individuals based upon their disability or because Mine Rite regarded them as disabled.

B.      Order Mine Rite to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Mine Rite to make Kaufman whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Mine Rite to make Kaufman whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 11-69 above, in amounts to be determined at trial.

E.      Order Mine Rite to pay Kaufman punitive damages for its malicious and reckless conduct, as described in paragraphs 11-69 above, in amounts to be determined at trial.

F.      Award the Commission its costs of this action.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED: March 31, 2017.

By: _Mary Jo O'Neill_
JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

MARY JO O'NEILL
Regional Attorney

JAMES P. DRISCOLL-MACEACHRON
Supervisory Trial Attorney

_/s/ Michael Baskind_
MICHAEL BASKIND
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, Arizona 85012

Attorneys for Plaintiff

JOHN R. GREEN
Acting United States Attorney

C. LEVI MARTIN
Assistant United States Attorney

Associate Local Counsel for Plaintiff